

# NUMBER 13-17-00218-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CARLOS GARCIA,                                                         Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

## On appeal from the 428th District Court
## of Hays County, Texas.

# MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Rodriguez[1]
### Memorandum Opinion by Justice Rodriguez[2]

---

[1] Retired Thirteenth Court of Appeals Justice Nelda Rodriguez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (West, Westlaw through 2017 1st C.S.).

[2] This cause is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.). Because this is a transfer case, we apply precedent of the transferring court of appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

Appellant Carlos Garcia appeals from his convictions of one count of aggravated sexual assault of a child and five counts of indecency with a child. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021(a)(1)(B) (West, Westlaw through 2017 1st C.S.). By ten issues, Garcia contends that the trial court (1) improperly denied his motion for severance (issue one), (2) allowed improper outcry witness testimony (issues two and three), (3) violated the confrontation clause (issue four), (4) admitted inadmissible evidence and excluded admissible evidence (issues five, six, seven, and eight), (5) failed to declare a mistrial (issue nine), and (6) committed cumulative error (issue ten).[3] We affirm.

## I. BACKGROUND

The State charged Garcia with one count of continuous sexual abuse of a child (count one), three counts of indecency with a child by sexual contact (counts two, three, and four), and two counts of indecency with a child by exposure (counts five and six). *See id*. § 21.02 (West, Westlaw through 2017 1st C.S.), § 21.11. The jury found Garcia guilty of the lesser-included offense of aggravated sexual assault of a child on count one and guilty of counts two through six. *See id*. §§ 21.11, 22.021. Garcia received a thirty-five-year sentence for count one, a fifteen-year sentence for count two, a ten-year sentence for count three, a two-year sentence for count four, and a five-year sentence for count five. For count six, Garcia received a ten-year suspended sentence and was placed on community supervision. The trial court ordered counts one, two, five, and six to run concurrently and counts three and four to run consecutively. This appeal followed.

## II. SEVERANCE

By his first issue, Garcia contends that the trial court erred by denying his motion

---

[3] We have renumbered Garcia's issues for purposes of our analysis.

to sever counts one through four from counts five and six. Specifically, Garcia argues that severance was required because counts one through four involved Y.G. while count five involved D.C. and count six involved M.C.[4]

## A. Standard of Review and Applicable Law

We review a trial court's denial of a motion to sever under an abuse of discretion standard of review. *Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.). A trial court abuses its discretion if its ruling is clearly wrong, lies outside the zone of reasonable disagreement, or is arbitrary or unreasonable. *Hodge*, 500 S.W.3d at 612.

If all offenses arise out of the same criminal episode, a defendant may be prosecuted in a single trial. TEX. PENAL CODE ANN. § 3.02(a) (West, Westlaw through 2017 1st C.S.). A "criminal episode" occurs when the defendant commits two or more offenses even if the harm is directed toward or inflicted upon more than one person when the offenses are the repeated commission of the same or similar offenses. *Id*. § 3.01 (West, Westlaw through 2017 1st C.S.). Although a defendant usually has an absolute right to severance of most charges that do not arise from the same criminal episode, there are several exceptions. *Werner v. State*, 412 S.W.3d 542, 546 (Tex. Crim. App. 2013); *see* TEX. PENAL CODE ANN. § 3.04(c) (West, Westlaw through 2017 1st C.S.). For example, the right to severance in cases that do not arise from the same criminal episode does not automatically apply to the prosecution of offenses described in section 3.03(b) of the Texas Penal Code. TEX. PENAL CODE ANN. § 3.04(c). Offenses listed in section 3.03(b) include, among others, continuous sexual abuse of a child, aggravated sexual

---

[4] To protect the identity of minor children, we refer to the children by their initials. TEX. R. APP. P. 9.8(b)(2).

assault of a child, and indecency with a child. *Id*. § 3.03(b) (West, Westlaw through 2017 1st C.S.); *see also Minor v. State*, No. 05-15-01060-CR, 2017 WL 462342, at *1 (Tex. App.—Dallas Feb. 3, 2017, no pet.) (mem. op., not designated for publication). When these offenses are charged, the trial court will sever the causes *only if* it "determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses. . . ." TEX. PENAL CODE ANN. § 3.04(c). "For these types of offenses, there is no presumption that the joinder of cases with different child victims is unfairly prejudicial, and the defendant bears the burden of showing how he would be unfairly prejudiced through consolidation." *Hodge*, 500 S.W.3d at 621 (internal citations omitted).

**B.    Discussion**

The conduct alleged in the indictments specified that Garcia exposed a part of his genitals to D.C. and M.C., and he contacted Y.G.'s sexual organ with his sexual organ. From this the trial court could have reasonably concluded that the conduct fell within the definition of a "criminal episode" because it involves the repeated commission of similar offenses in that he exposed his genitals to all three children. *See id.*; *Waddell v. State*, 456 S.W.3d 366, 370 (Tex. App.—Corpus Christi 2015, no pet.) (explaining "it need only be shown that the offenses for which a defendant was charged and convicted were the repeated commission of the same or similar offense" and does not require proof that offenses were committed in same or similar fashion).

Moreover, in cases "involving multiple felony counts of alleged sex offenses against children, the legislature has balanced competing interests and has determined that the defendant is entitled to sever only if he can show 'unfair' prejudice—i.e., some type of prejudice beyond that which he would automatically face in any case in which

4

felony counts are joined." *Hodge*, 500 S.W.3d at 622. Here, Garcia did not identify anything that would result in prejudice beyond what would be inherent in the joinder of felony offenses at trial. *See id*. Garcia argued that there were different victims and the crimes were not the same or similar. However, we have already determined that the trial court did not abuse its discretion by concluding that the offenses were similar, and we cannot conclude that the trial court abused its discretion by determining that there would be no unfair prejudice by allowing joinder of the causes. *See id*.

Finally, section 2 of article 38.37 of the Texas Code of Criminal Procedure provides that evidence that the defendant committed a separate offense of indecency with a child, continuous sexual abuse of a child, sexual assault of a child, or aggravated sexual assault of a child is admissible "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. art. 38.37 (West, Westlaw through 2017 1st C.S.). Thus, even if the trial court had granted Garcia's motion to sever, it is likely that the evidence from the severed causes would have been admissible. *See id*.; *Hodge*, 500 S.W.3d at 623. For these reasons, we cannot conclude that the trial court abused its discretion by determining that Garcia failed to meet his burden of showing that joinder of the causes was unfairly prejudicial. Accordingly, we conclude that the trial court did not abuse its discretion by denying Garcia's motion to sever. We overrule Garcia's first issue.

### III.    OUTCRY WITNESSES

By his second and third issues, Garcia contends that the trial court failed to comply with the outcry statute by designating the wrong outcry witnesses for D.C. and Y.G.

because the evidence showed that the children made their outcries to other people.[5]

## A.    Standard of Review and Applicable Law

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The outcry witness must be the first person who is eighteen years' or older "to whom the child makes a statement that in some discernible manner described the alleged offense" and provides more than "a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through 2017 1st C.S.); *Chapman*, 150 S.W.3d at 812.

## B.    D.C.

The trial court designated M.C. and D.C.'s stepmother as their outcry witness. Garcia objected, arguing that D.C. made her first outcry to her mother. Garcia presented a police report that states that D.C. "said the first person she told about [Garcia] was her mom, then her step-mom" and when D.C. told her mom, "her mom said [that Garcia] was just playing around and he would stop when she talked to him about it."

At the outcry hearing, D.C.'s stepmother testified that M.C. and D.C. first told her

---

[5] Garcia does not point to any evidence in the record that M.C. made an outcry to anyone other than D.C.'s stepmother. Thus, the only question before us is whether D.C.'s stepmother was the proper outcry witness for D.C. We will analyze Garcia's issue regarding Y.G.'s outcry witness separately.

6

about Garcia's conduct on May 15, 2015 when the family left a local restaurant.[6]  D.C.'s stepmother stated that M.C. told her that Garcia walked around the house naked and asked if he could touch M.C.'s private parts.  D.C.'s stepmother testified that M.C. told her that Garcia said he wanted to give M.C. money for touching her private parts like he did with D.C.  According to D.C.'s stepmother, D.C. began crying.  One of the children told her that on one occasion, when Garcia was sitting naked on the couch, he asked the child to sit next to him, she did, and he "took his part and he was moving it, you know and he was shaking it like if it was a tongue."[7]  On cross-examination, D.C.'s stepmother denied that D.C. and M.C. had stated that they told their mother about Garcia walking around naked.  Garcia's trial counsel asked if D.C.'s stepmother was aware that the children had told their mother about the accusations a year prior to telling her.  D.C.'s stepmother replied, "That's not—they didn't say anything to their mom."  D.C.'s stepmother stated, "Because when I learned about this, two days after, we talked to their mom.  We brought the girls to their mom.  And their mother told them, "Why didn't you say anything about that to me before?" and [D.C.] said, "Because we thought that you were not gonna believe us.  We were afraid."  D.C.'s stepmother said that when she informed D.C.'s mother about Garcia's conduct, D.C.'s mother was "surprised" started crying and said that "It couldn't be" and "I cannot believe he has done this."

We conclude that the trial court could have reasonably believed that D.C.'s

---

[6] As we are discussing whether D.C. and M.C.'s stepmother qualified as an outcry witness for D.C., for brevity's sake we will refer to her as D.C.'s stepmother, we will refer to their mother as D.C.'s mother, and their father as D.C.'s father.

[7] D.C.'s stepmother did not clarify whether D.C. or M.C. made this statement to her.  However, she stated that M.C. did the majority of talking on that day, and that D.C. told her about her allegations a few days later.

stepmother was the first person eighteen years or older D.C. told about Garcia's conduct. D.C.'s stepmother made it clear that D.C.'s mother was surprised at the allegations and stated that the children had not said anything about Garcia's conduct to her before, and the children acknowledged that they had not told their mother about Garcia's conduct because they did not think their mother would believe them and they were "afraid." In addition, although the police report states that the first person D.C. told about Garcia's conduct was her mother, there is no evidence that D.C. made a statement to her mother that in some discernible manner described the alleged offense and provided more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 92. According to the report, D.C.'s mother said that Garcia was just playing around, a fact from which the trial court could have reasonably inferred that D.C. had not told her mother that Garcia exposed his genitals to her as that conduct cannot be construed as a joke or as "playing around."

Accordingly, the trial court did not abuse its discretion in designating D.C.'s stepmother as the outcry witness. We overrule Garcia's second issue.[8]

## C.    Y.G.

The trial court designated Vanessa Paulini, the forensic interviewer with Roxanne's House, as the outcry witness for Y.G. Garcia objected on the basis that the first person Y.G. told about Garcia's conduct was her boyfriend, who was eighteen.[9] On appeal,

---

[8] By a sub-issue to his second issue, in one sentence, Garcia contends that the trial court erred in allowing D.C.'s stepmother to testify as to extraneous acts. The brief does not include any pertinent law or analysis of the issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, we decline to address it as it is inadequately briefed. *See id.*

[9] Paulini explained that Roxanne's House is the "local CAC, the Children's Advocacy Center," which is an "umbrella agency which is part of the Hays-Caldwell Women's Center" where she interviews "the children that may have experienced some type of trauma, whether it be sexual abuse, physical abuse,

8

Garcia argues that Paulini was not the first person eighteen or older Y.G. told about her allegations. We disagree.

At the outcry witness hearing, Y.G. testified that Paulini was the "first person" to whom "she articulated all these little incidences with" Garcia. Y.G. stated that Paulini was "the first person I went into detail with." The State asked Y.G. what she told her boyfriend, and she said, "I just told him that I didn't have a good father" and "sometimes he would do things that fathers shouldn't do."[10] Y.G. denied that she told her boyfriend that Garcia "attempted multiple times to have sex" with her, "rubbed his penis on [her] vagina," touched her breasts, or grabbed her hand and put it on his penis. When pressed on cross-examination by Garcia's trial counsel to state exactly what she told her boyfriend, Y.G. responded, "I just—remember telling him that [Garcia] wasn't a good father and that he's not in my life anymore and he would do things that weren't right." Also during cross-examination by Garcia's counsel, Y.G. acknowledged that she told Paulini that her boyfriend was eighteen; however, she clarified that she meant that her boyfriend was eighteen at the time that she made her outcry to Paulini. And, on redirect examination, Y.G. testified that her boyfriend was not eighteen when she told him that Garcia was not a good father and that "he would do things that weren't right."

Here, the trial court heard evidence that when Y.G. told her boyfriend about Garcia's conduct, her boyfriend was not eighteen years old. In addition, Y.G. testified that she only told her boyfriend that Garcia was not a good father and did things that fathers should not do. There is no evidence that Y.G. made a statement to her boyfriend

---

witness to domestic violence, homicide, suicide, sometimes attempted abductions, kidnappings, that kind of stuff."

[10] Y.G. is Garcia's biological daughter.

that in some discernible manner described the alleged offenses. *See Garcia*, 792 S.W.2d at 92. In fact, Y.G. denied providing any details of the sexual abuse to her boyfriend. And, based on her testimony, the trial court could have reasonably found that she merely made "a general allusion that something in the area of child abuse was going on" when she told her boyfriend that Garcia did things a father should not do. *See id.* Accordingly, we cannot conclude that the trial court abused its discretion by designating Paulini as the outcry witness regarding Y.G.'s allegations.[11] We overrule Garcia's third issue.[12]

## IV.    CONFRONTATION CLAUSE

By his fourth issue, Garcia contends that the trial court violated the confrontation clause by limiting his ability to cross-examine D.C.'s stepmother.

## A.    Applicable Law

The Confrontation Clause of the United States Constitution guarantees a defendant the right to cross-examine witnesses. A defendant may cross-examine a witness on any subject "reasonably calculated to expose a motive, bias or interest for the witness to testify." However, this right is not without limits. The trial court has considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose. To this end, the trial court has the discretion to limit the scope of cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. This limitation does not violate the defendant's right to confront a witness so long as (1) the possible bias and motive of the State's witness is clear to the trier of fact; and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination.

However, the Sixth Amendment should be liberally construed to give appropriate constitutional protection to the defendant. Accordingly, the

---

[11] Y.G. claimed that Garcia committed the offenses when she was around eleven. At the time of Garcia's trial, Y.G. was sixteen.

[12] By a sub-issue to his third issue, in one sentence, Garcia alleges that the trial court "erred in allowing Paulini to testify to numerous extraneous acts, which fall outside of the outcry statute's exception." Garcia has provided no analysis to support this allegation. *See* TEX. R. APP. P. 38.1(h). Accordingly, we decline to address it as it is inadequately briefed. *See id.*

10

[Texas] Court of Criminal Appeals has emphasized that the right to cross-examination "includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." Moreover, any question asked of a witness on cross-examination, which might have a tendency to show the witness'[s] credibility, is always a proper question. Thus, the proper scope of cross-examination includes "all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only."

Notwithstanding the trial court's discretion in this area, jurors are entitled to have the benefit of the defense theory before them so that they can make an informed decision regarding the weight to accord the witness's testimony, even though they may ultimately reject the theory.

*Sansom v. State*, 292 S.W.3d 112, 118–21 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (internal citations omitted).

B.    Discussion

Specifically, in his fourth issue, Garcia argues that the trial court should have allowed him to question D.C.'s stepmother regarding (1) the citizenship status of D.C.'s father and (2) how she obtained her U visa.

In *Sansom v. State*, the State's witness Margarita Arcos was married to the appellant and her two daughters claimed that the appellant had sexually abused them. *Id*. at 116.   At trial, the appellant questioned Arcos on cross-examination regarding whether she was a citizen of the United States of America.  *Id.*  The trial court did not allow the appellant to do so, and the appellant objected arguing that the trial court was violating his confrontation rights.  *Id*.

The court of appeals concluded that the trial court abused its discretion by limiting the appellant's cross-examination of Arcos.  *Id*. at 120.  The court of appeals explained that the appellant's defensive theory was "premised, in part, on the citizenship status of

Arcos and the timing of the sexual abuse allegation in relation to a telephone conversation between Arcos and appellant regarding the subject of divorce in October 2005," and the appellant "sought to question Arcos regarding her citizenship status, in an attempt to demonstrate to the jury that, since [sic] Arcos would presumably face deportation in the event of divorce, [the children] fabricated the sexual abuse charges against [the] appellant to dissuade him from seeking a divorce." *Id*. at 121. The court of appeals reasoned that it was not clear to the jury that Arcos had any possible bias and motive, which would have been evinced by her testimony regarding her citizenship status. *Id*. The court stated that the trial court denied the jury the thrust of the appellant's "deportation-in-the-event-of-divorce defense theory," and it deprived "the jury the ability to make an informed decision regarding the weight to accord Arcos's testimony, even though the jury may have ultimately rejected [the] appellant's theory." *Id*.

Here, the trial court first limited Garcia's questioning of D.C.'s stepmother concerning the citizenship status of D.C.'s father who was not a witness in this case.[13] Thus, here, unlike in *Samson*, Garcia was not attempting to impeach a witness regarding the witness's own citizenship status. In addition, there is nothing in the record showing that D.C.'s father was facing deportation or that he would not be deported if Garcia were convicted of the crimes. The witness's immigration status is relevant if it is logically connected to a motive to lie, and here D.C.'s father was not a witness. *See id*. Thus, the trial court could have reasonably found that evidence of the citizenship status of D.C.'s

---

[13] Garcia's defensive theory was that because D.C.'s stepmother had obtained her U visa after her son was sexually assaulted, D.C.'s stepmother and father coaxed D.C. and M.C. to falsely claim that Garcia committed the charged offenses so that D.C.'s father could also obtain a U visa, which is given to a parent of a victim of certain crimes. Garcia argued that D.C.'s stepmother's testimony regarding her U visa and D.C.'s father's citizenship status was relevant to support his theory that the children and stepmother had a motive to lie.

father was not relevant or logically connected to D.C.'s stepmother's motive to lie. Moreover, the trial court has discretion to limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *See id*. at 118. Garcia's assertion that the family plotted against him so that D.C.'s father could obtain a U visa is not supported by any evidence and only supported by his hypothetical assertion. In *Samson*, there was evidence that Arcos, a witness testifying against the appellant, would be deported if the appellant sought a divorce and Arcos then fabricated the allegations in retaliation. *Id.* at 119. Here, there is no evidence that D.C.'s stepmother would benefit in any way from Garcia's conviction, and D.C.'s father did not testify and thus he was not available for impeachment purposes. Thus, we cannot conclude that the trial court abused its discretion in not allowing Garcia to question D.C.'s stepmother about D.C.'s father's citizenship status.

Garcia also complains that the trial court violated the Confrontation Clause by limiting his questioning of D.C.'s stepmother regarding how she acquired her U visa. However, it was within the trial court's discretion to find that how D.C.'s stepmother acquired her U visa had no relevance to her motive or bias. Accordingly, we cannot conclude that the trial court abused its discretion by limiting Garcia's cross-examination of her in that regard. We overrule Garcia's fourth issue.

## V. EVIDENTIARY RULINGS

By his fifth, sixth, and eighth issues, Garcia contends the trial court abused its discretion when it improperly admitted hearsay, extraneous evidence, and Paulini's testimony as an expert witness. By his seventh issue, Garcia contends that the trial court

13

improperly excluded evidence of Y.G.'s sexual history with her boyfriend.

**A.     Standard of Review**

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *see Garcia*, 792 S.W.2d at 92. A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id*. at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

**B.     Hearsay**

By his fifth issue, Garcia contends that the trial court improperly overruled multiple hearsay objections.

"Hearsay is a statement other than the one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). A "statement" is (1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." *Id.* R. 801(a). However, "[w]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999). We determine whether testimony violates the hearsay prohibition by analyzing how strongly the content of the out-of-court statement can be inferred from the context. *Id*.

14

First, Garcia argues that the State's questioning of Detective Mike Andrews constituted indirect hearsay because the State was attempting to get before the jury the contents of the children's statements via Detective Andrews's testimony. Garcia first complains of the following exchange:

| | |
|---|---|
| [The State]: | Okay. Do you remember if [M.C. and D.C.] were able to describe what [Garcia's] penis looked like? |
| [Garcia]: | I'm gonna object to hearsay, Your Honor and not proper outcry. |
| [The State]: | It's just if he's able to remember if they were able to describe it, Judge. |
| [Trial Court]: | As to that question, the objection is overruled. |
| [Detective Andrews]: | Yes, they were able to. |

Taking the State's questioning of Detective Andrews in context, prior to and after eliciting the complained-of testimony, the State asked Detective Andrews a series of questions regarding the children's demeanor during the forensic interview and their memory of the events to show what lead Detective Andrews to believe that Garcia had committed the offense of indecency with a child by exposure. Thus, the facts before us demonstrate that the State offered the complained-of testimony to show how Garcia became a suspect and why Detective Andrews commenced his investigation of Garcia. *See Lee v. State*, 29 S.W.3d 570, 577–78 (Tex. App.—Dallas 2000, no pet.) ("Police officers may testify to explain how the investigation began and how the defendant became a suspect.") (citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App.); *Short v. State*, 995 S.W.2d 948, 954 (Tex. App.—Fort Worth 1999, pet. ref'd) (complained-of testimony merely explains why police officer began his investigation); *Thornton v. State*, 994 S.W.2d 845, 854 (Tex.

15

App.—Fort Worth 1999, pet. ref'd) (police officer's testimony not hearsay when admitted to establish the course of events and circumstances leading to defendant's arrest)). Based on the context of the State's questions to Detective Andrews, it was within the trial court's discretion to determine that the complained-of testimony did not leave the jury with the inescapable conclusion that the State proffered it to prove the truth of any statements made outside the courtroom. *See Head*, 4 S.W.3d at 261. Accordingly, we conclude that the trial court's decision to overrule appellant's hearsay objection was within the zone of reasonable disagreement, and it did not abuse its discretion in allowing the complained-of testimony. *See id*. at 261–63. Nonetheless, essentially the same or similar evidence was properly admitted at other points during the trial; therefore, error, if any was cured. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Lamerand v. State*, 540 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999)); *Gauna v. State*, 534 S.W.3d 7, 10 (Tex. App.—San Antonio 2017, no pet.) ("'An error, [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.'") (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)).

Next, Garcia complains of the following:

| [The State]: | Okay. And did [D.C.'s stepmother] have information? |
|---|---|
| [Detective Andrews]: | Yes, she did. |
| [The State]: | All right. And was the information that [D.C.'s stepmother] offered you, was it consistent with what [D.C. and M.C.] said in their forensic interview? |
| [Garcia]: | I would object to around about hearsay, Your Honor. I mean, that's a hearsay question. |

16

| | |
|---|---|
| [The State]: | I'm not getting into a statement. |
| [Garcia]: | Consistent with is revealing the statement, Your Honor. |
| [Trial Court]: | The objection is overruled. |

. . . .

| | |
|---|---|
| [Detective Andrews]: | Yes, there was—it was consistent. |

In *Head v. State*, the State asked an investigating officer whether out-of-court statements by the outcry witness, the victim, and the victim's mother were consistent. *See id*. at 260. The trial court overruled the appellant's hearsay objection. *Id.* The Texas Court of Criminal Appeals agreed with the trial court that the complained-of testimony was not hearsay explaining "that the testimony did not reveal to the jury the substance of the out-of-court statements, but rather only conveyed that the facts themselves were uniform." *Id*. at 262–63. Here, like in *Head*, it was within the trial court's discretion to conclude that Detective Andrews's testimony only conveyed to the jury that the facts of the statements were uniform. *See id*. Detective Andrews's testimony that the statements were consistent "did not lead to any inescapable conclusions as to the substance of the out-of-court statements" made by D.C. and M.C. but instead indicated only that M.C.'s and D.C.'s statements were consistent with D.C.'s stepmother's statements. *See id.* at 262. Accordingly, we cannot conclude that the trial court abused its discretion by overruling Garcia's hearsay objection. *See id*.

Next, Garcia complains of the following exchange:

| | |
|---|---|
| [The State]: | Did [Y.G.'s] interview corroborate part of D.C.'s and M.C.'s interview? |
| [Garcia]: | Object to hearsay, Your Honor. We haven't |

17

even had—

[Trial Court]:              Sustained.

[Garcia]:                   Thank you.

[The State]:                But you were able to watch . . . all three interviews?

[Detective Andrews]:        Yes, ma'am.

[The State]:                Okay.   And were there patterns that you believed were similar?

[Garcia]:                   Again, objection, Your Honor, to pattern similar as it relates to [Y.G.'s] interview.

[Trial Court]:              Overruled.

. . . .

[Detective Andrews]:        Yes.

Here, Detective Andrews's testimony indicated that he believed that the patterns as described in Y.G.'s forensic interview were similar to the patterns as described by D.C. and M.C. in their forensic interviews.   We interpret this to mean that in Detective Andrews's opinion, the patterns of Garcia's behavior as described by all three children were similar.   However, from the context of the testimony, no inference can be made about the content of the children's out-of-court statements.  *See id*. at 261.   In other words, Detective Andrews did not imply what Y.G., D.C., or M.C. said in their forensic interviews. We conclude that Detective Andrews's testimony did not produce an inescapable conclusion that the evidence was being offered to prove the substance of the children's out-of-court statements.  *Id*.   Accordingly, the trial court did not abuse its discretion by overruling Garcia's hearsay objection.   Nonetheless, the children all testified regarding Garcia's acts, and the testimony of a child alone is enough to support a conviction.   TEX.

18

CODE CRIM. PROC. art. 38.07 (a) (providing that a conviction for sexual assault is supportable on the uncorroborated testimony of the victim of the sexual offense); *IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.). Therefore, even assuming error, it was harmless.

Finally, Garcia complains of Detective Andrews's testimony during redirect examination by the State wherein the following exchange occurred:

| [The State]: | Did everybody that you spoke to in this case indicate that these offenses happened on Jennifer Drive? |
|---|---|
| [Garcia]: | I'll object to that calling for hearsay, Your Honor. |
| [Trial Court]: | Overruled. |
| | . . . . |
| [The State]: | Did everybody that you spoke to indicate that this offense happened on Jennifer Drive? Was that in any sort of dispute? |
| [Detective Andrews]: | No. |

Prior to this complained-of testimony, on cross-examination, Garcia asked Detective Andrews whether he went to the "house during [his] investigation." Detective Andrews replied, "On Jennifer Drive, no, I did not." Garcia asked, "And that was where the alleged offense happened, correct?" Detective Andrews said, "Yes, ma'am." In addition, Y.G. testified that Garcia committed the offenses at the house on Jennifer Drive, and Paulini stated that Y.G. told her that Garcia committed some of the offenses at the Jennifer Drive house.

"[I]nadmissible evidence can be rendered harmless if other evidence at trial is

admitted without objection and it proves the same fact that the inadmissible evidence sought to prove." *Mayes*, 816 S.W.2d at 88. Here, essentially the same or similar evidence was properly admitted at other points during the trial; therefore, the proper admission of this evidence cured any possible error that may have occurred by admitting the complained-of testimony. *See id*.; *Lamerand*, 540 S.W.3d at 257 (citing *Brooks*, 990 S.W.2d at 287); *Gauna*, 534 S.W.3d at 10 ("'An error, [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.'") (quoting *Valle*, 109 S.W.3d at 509). We overrule Garcia's fifth issue.

## C.      Article 38.37

By his sixth issue, Garcia contends that the trial court reversibly erred by admitting extraneous evidence without providing him with notice and a hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West, Westlaw through 2017 1st C.S.).

Garcia complains that the record does not reflect that he was provided notice that extraneous acts would be admitted pursuant to article 38.37, which, in relevant part, allows the admission of evidence of other wrongs, crimes, or acts committed by the defendant against the child victim. *See id*. Although not specifically labeled as an article 38.37 notice, the record includes the State's notice of intent to use the outcry statement of a child abuse victim. This document notified Garcia that the State intended to present evidence of Y.G.'s statements describing all of the extraneous offenses that Garcia claims were admitted without proper notice. Thus, the State did provide Garcia with the required notice pursuant to article 38.37 that it sought to admit the evidence of other wrongs, crimes, or acts committed by Garcia against Y.G., and the trial court did not abuse its discretion by admitting the evidence. *See Martin v. State*, 176 S.W.3d 887, 900 (Tex.

20

App.—Fort Worth 2005, no pet.) (explaining that the trial court did not abuse its discretion when it overruled the appellant's article 38.37 lack of sufficient notice requirement because, among other reasons, the appellant had access to the offense report and witness statements since the return of the indictment).

Next, Garcia argues that the trial court should have conducted a hearing pursuant to article 38.37. *See* TEX. CODE CRIM. PROC. art. 38.37 § 2-a. The State responds that article 38.37 section 2-a does not apply in this situation. *See id.* We agree with the State.

Article 38.37 section 2(b) states that separate offenses of a sexual nature committed by the defendant are admissible for any bearing the evidence has on relevant matters including character conformity subject to section 2-a. *Id.* § 2(b), 2-a. Article 38.37 section 1(b) allows the trial court to admit "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense . . . ." *Id.* § 1(b). Article 38.37 section 2-a clarifies that the trial court must conduct a hearing only before evidence described by section 2 is introduced. *Id.* § 2-a(2). There is nothing in article 38.37 requiring a hearing prior to admission of evidence described in section 1(b). *See id.* And section 1(b) does not state that it is "subject to" section 2-a. *See id.*

Here, the trial court, without conducting a preliminary hearing, admitted evidence pursuant to section 1(b) of other crimes, wrongs, and acts that Garcia committed against, Y.G., the victim of the alleged offenses. However, as stated above, article 38.37 only requires a hearing when the State seeks to introduce evidence described in section 2, which includes evidence that the defendant committed other sexual-type offenses against other children. *Id.*; *Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.]

2016, pet. ref'd) ("Under Article 38.37 [section 2(b)], the State is allowed to provide evidence of other children who the defendant has sexually assaulted 'for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.'"). Because there is nothing in article 38.37 requiring a hearing prior to the admission of other crimes against the child victim, we conclude that the trial court did not commit error by failing to conduct a hearing regarding Garcia's complaints. We overrule Garcia's sixth issue.

## D. Y.G.'s Sexual History

By his seventh issue, Garcia argues that the trial court reversibly erred by excluding evidence of Y.G.'s sexual activity with her boyfriend because it was "an alternative source of sexual knowledge."

Before his cross-examination of Y.G., Garcia requested a "412 hearing." The trial court complied, and outside the presence of the jury, Y.G. testified about her sexual history with her boyfriend. Garcia asked the trial court to allow Y.G. to testify about this evidence in front of the jury arguing that it was relevant because prior to her outcry, Y.G. engaged in the same sexual acts with her boyfriend that she accused Garcia of doing. The State argued that the evidence was inadmissible under rule of evidence 412, which prohibits the admission of "specific instances of a victim's past sexual behavior." *See* TEX. R. EVID. 412.

Rule 412's general prohibition of evidence of the victim's past sexual history has several exceptions. *Id*. The evidence is admissible if its probative value outweighs the danger of unfair prejudice and it (1) "is necessary to rebut or explain scientific or medical evidence offered by the prosecutor," (2) "concerns past sexual behavior with the

22

defendant and is offered by the defendant to prove consent," (3) "relates to the victim's motive or bias," (4) "is admissible under Rule 609," or (5) "is constitutionally required to be admitted." *Id.*

Here, Garcia did not argue that any of the above-cited exceptions applied or that the probative value of the evidence outweighed the danger of unfair prejudice. Accordingly, we cannot conclude that the trial court abused its discretion by denying Garcia's request to present evidence of Y.G.'s sexual history. We overrule Garcia's seventh issue.

### E. Improper Expert Testimony

By his eighth issue, Garcia contends that the trial court improperly qualified Paulini as an expert concerning the coaching, grooming, and the disclosure process involved in cases of sexual abuse of a child.[14] Specifically, Garcia argues that Paulini was not qualified because the State did not show that Paulini had testified as an expert before, Paulini is not licensed, and Paulini did not elaborate on what type of degree she has in social work.

Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702.

> The special knowledge which qualifies a witness to give an expert opinion
> may be derived entirely from a study of technical works, or specialized

---

[14] On appeal, Garcia further argues that Paulini was not qualified to be an expert regarding "the general behavioral characteristics and traits shown by sexually-abused children." However, Garcia did not object to her testimony on that basis in the trial court. Thus, this argument is not preserved. *See Mendez v. State*, 138 S.W.3d 334, 338 (Tex. Crim. App. 2004); *see also* TEX. R. APP. P. 33.1(a); *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013) ("Most appellate complaints must be preserved by a timely request for relief at the trial level.").

23

education, or practical experience or varying combinations thereof; what is determinative is that his answers indicate to the trial court that he possesses knowledge which will assist the jury in making inferences regarding fact issues more effectively than the jury could do so unaided.

*Holloway v. State*, 613 S.W.2d 497, 501 (Tex. Crim. App. 1981).

Here, Paulini testified that she has been a forensic interviewer since 2011, has a degree in sociology, has extensive training in child abuse, and has worked in the child abuse field, including her experience with Child Protective Services, for sixteen years. Paulini stated that as a forensic interviewer, she is required to participate in continuous education, which occurs once or twice a year. Paulini testified that she is a member of the Professional Society of Forensic Interviewers where she undergoes peer review. Paulini stated that within the peer review process, there are discussions and she reviews "research articles on every topic that [she] can when it comes to interviewing the children." Regarding the discussions, she said,

> we talk about the grooming process, we talk about delayed outcries, there are coaching that we talked about that before, interview techniques, different ones that are out there. We also talk about the different states and the different requirements they have within the states, our being, obviously, Texas so ours is different than a lot of other states. We touch on just about every topic that we can think of.

The State asked if her field of expertise included topics such as grooming, coaching, delayed outcry, and the disclosure process. Paulini replied, "Yes." Paulini affirmed that when she conducts the forensic interview, she relies on the principles which encompass those topics. Paulini has interviewed 1,906 children. Paulini agreed that her knowledge of the grooming and disclosure process would be helpful to the jury's understanding. On cross-examination, Garcia asked how Paulini was an expert in grooming. Paulini said,

> Well, interviewing as many children as I have, there are certain things that we've gone through when it comes to the training to do that. But, also, all

24

the training that I've been through, the different conferences, I have been through many trainings talking about alleged perpetrators and the things that they do that encompasses the whole grooming process and how they groom the children as well as the families surrounding that child, so that would be—

Paulini's answers indicate she possesses knowledge and training regarding coaching, grooming, and the disclosure process.  Accordingly, we conclude that the trial court did not abuse its discretion in allowing Paulini to testify as an expert witness on those matters.  We overrule Garcia's eighth issue.

### VI.    MISTRIAL

By his ninth issue, Garcia contends that the trial court erred when it denied his motion for mistrial because Detective Andrews commented on Garcia's post-arrest silence.  Specifically, Garcia complains of the following:

| [The State]: | Okay.  Now, did you just close the case shut or did you do anything else? |
| --- | --- |
| [Detective Andrews]: | No.  The warrants were issued on June 12th. |
| [The State]: | And is this of 2015. |
| [Detective Andrews]: | Yes, I'm sorry, 2015. |
| [The State]: | All right. |
| [Detective Andrews]: | And on June 22nd, I was advised that [Garcia] had been arrested. |
| [The State]: | Okay. |
| [Detective Andrews]: | And another detective and I attempted to interview him. |
| [The State]: | And were you able to interview him at that time? |
| [Detective Andrews]: | No, I was not.  We spoke with him and— |
| [Garcia]: | Your Honor. |

25

| | |
|---|---|
| [The State]: | It's okay. You may say, "No." |
| [Garcia]: | May we approach? |
| [Trial Court]: | You may. |
| [Garcia]: | She just alluded to the fact that he exercised his right to remain silent. |
| [The State]: | He didn't say that. I just asked if he attempted to interview him. And he said—or Were you able to interview him. He said, "No." And then I stopped him. |
| [Garcia]: | He said, "I attempted to." She asked him, "Did you attempt to?" She knows that he exercised his right to an attorney. |
| [The State]: | We're not even gonna get there. |
| [Garcia]: | But it was bad faith to ask the question in the first place. |
| [The State]: | If—they're gonna sit there which they're probably gonna do on cross-examination, "You mean, you only tried to talk to him once, and then you stopped your investigation?" |
| [Garcia]: | If we'd opened the door— |
| [Trial Court]: | We're gonna instruct the jury to disregard that question and answer. |
| [Garcia]: | I would ask for a mistrial, Your Honor. |
| [Trial Court]: | That's overruled. |

The trial court then instructed the jury to disregard the last question asked by the State and Detective Andrews's response.[15]

---

[15] We note that later, during direct examination by the State, Detective Andrews testified that he interviewed Garcia after he was arrested. The trial court admitted a video of Detective Andrews's interview with Garcia, which the State played for the jury during Detective Andrews's testimony.

A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). The trial court must grant a mistrial only for "highly prejudicial and incurable errors" and it is required only when the "error is so prejudicial that 'expenditure of further time and expense would be wasteful and futile.'" *Id.* (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). And "ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer." *Id.*

Here, immediately upon Garcia's objection, the trial court held a brief bench conference, sustained Garcia's objection, and instructed the jury to "disregard the last questions and any part of that response to that question." This prompt instruction to disregard cured error, if any, associated with the State's question and Detective Andrews's answer.[16] *See id.* Accordingly, we conclude that the trial court did not abuse its discretion by denying Garcia's motion for mistrial. We overrule Garcia's eighth issue.

## VI.    Cumulative Error

By his tenth issue, Garcia contends that cumulative error requires reversal. Specifically, Garcia argues that the trial court's errors bolstered the complainants' credibility and prevented the proper development of his defense.

Under the cumulative error doctrine, multiple harmless errors can, in the aggregate, constitute reversible error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009). "The cumulative error doctrine provides relief only when constitutional errors so 'fatally infect the trial' that they violated the trial's 'fundamental fairness.'" *United States*

---

[16] Garcia does not explain why the trial court's instruction to disregard was insufficient. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc) ("We generally presume the jury follows the trial court's instructions in the manner presented.").

*v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992) (en banc)).

We have not found multiple constitutional errors warranting reversal. *See id.* Thus, Garcia has not shown that the cumulative error doctrine applies. *See id*.; *Gamboa*, 296 S.W.3d at, 585. We overrule Garcia's tenth issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

NELDA RODRIGUEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
28th day of March, 2019.